

**U.S. Department of Justice**

*United States Attorney*
*Southern District of West Virginia*



United States Courthouse
300 Virginia Street, East
Charleston, WV 25301
FAX: (304) 347-5104

Mailing Address
Post Office Box 1713
Charleston, WV 25326
(304) 345-2200
1-800-659-8726

FILED
DEC 15 2009
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

November 17, 2009

J. Timothy DiPiero, Esquire
604 Virginia Street, East
Charleston, West Virginia 25301

Re: United States v. John Theodore Tiano, M.D.

Dear Mr. DiPiero:

This will confirm our conversations with regard to your client, John Theodore Tiano, M.D. (hereinafter "Dr. Tiano"). As a result of these conversations, it is agreed by and between the United States and Dr. Tiano as follows:

1. **CHARGING AGREEMENT.** Dr. Tiano agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a two-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

2. **RESOLUTION OF CHARGES.** Dr. Tiano will plead guilty to violations of 21 U.S.C. § 846 (conspiracy to use a registration number to distribute controlled substances in violation of 21:843(a)(2)) and 18 U.S.C. §§ 1347 and 2 (aiding and abetting health care fraud) as charged in said information.

3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Dr. Tiano will be exposed by virtue of this guilty plea is as follows:

<u>COUNT ONE</u>

(a) Imprisonment for a period of 4 years;

(b) A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

Defendant's

J. Timothy DiPiero, Esquire
November 17, 2009
Page 2                                    Re: John Theodore Tiano, M.D.

    (c)    A term of supervised release of 1 year;

    (d)    A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013;

    (e)    Pursuant to 21 U.S.C. § 862(a)(1), the Court may deny certain federal benefits to Dr. Tiano for a period of 5 years; and

    (f)    Restitution as may be ordered by the Court pursuant to 18 U.S.C. §§ 3663 and 3664.

## COUNT TWO

    (a)    Imprisonment for a period of 10 years;

    (b)    A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)    A term of supervised release of 3 years;

    (d)    A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

    (e)    Restitution as may be ordered by the Court pursuant to 18 U.S.C. §§ 3663A and 3664.

## TOTAL MAXIMUM

    (a)    Imprisonment for a period of 14 years;

    (b)    A fine of $500,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)    A term of supervised release of 3 years;

Defendant's initials

J. Timothy DiPiero, Esquire
November 17, 2009
Page 3                           Re: John Theodore Tiano, M.D.

   (d) A mandatory special assessment of $200 pursuant to 18 U.S.C. § 3013;

   (e) Pursuant to 21 U.S.C. § 862(a)(1), the Court may deny certain federal benefits to Dr. Tiano for a period of 5 years; and

   (f) Restitution as may be ordered by the Court pursuant to 18 U.S.C. §§ 3663, 3663A and 3664.

4. **LICENSE REVOCATION.** Dr. Tiano agrees:

   (a) to surrender all of his Drug Enforcement Administration (DEA) Certificates of Registration at a time and place to be determined by the United States;

   (b) not to oppose revocation of any registration to dispense controlled substances pursuant to 21 U.S.C. § 824(a) and 21 C.F.R. § 1301.45 on the ground that he has been convicted of a felony relating to a controlled substance and committed such acts as would render his registration under 21 U.S.C. § 823 inconsistent with the public interest as determined under that section; and

   (c) not to apply for re-registration with DEA until on or after the termination of any period of imprisonment and/or supervision which may be imposed by the Court.

5. **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Dr. Tiano will tender a check or money order to the Clerk of the United States District Court for $200, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Dr. Tiano will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Dr. Tiano fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United

_JT_
Defendant's
initials

J. Timothy DiPiero, Esquire
November 17, 2009
Page 4                              Re:  John Theodore Tiano, M.D.

States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Dr. Tiano.

      6. **RESTITUTION.** Dr. Tiano agrees that he owes restitution in the amount of $119,785.57 and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Dr. Tiano further agrees as follows:

    (a) Dr. Tiano agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and testimony concerning assets upon request of the United States.

    (b) Dr. Tiano will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will return these completed forms to counsel for the United States within seven calendar days from the date of the signing of this plea agreement.

    (c) Dr. Tiano agrees not to dispose of, transfer or otherwise encumber any real or personal property which he currently owns or in which he holds an interest.

    (d) Dr. Tiano agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and interest he may have in and to such property, and waives his right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

_/T_<br>Defendant's<br>initials

J. Timothy DiPiero, Esquire
November 17, 2009
Page 5                                    Re:   John Theodore Tiano, M.D.

(e) Dr. Tiano agrees not to appeal any order of the District Court imposing restitution unless the amount of restitution imposed exceeds the amount set forth in this plea agreement. However, nothing in this provision is intended to preclude the Court from ordering Dr. Tiano to pay a greater or lesser sum of restitution in accordance with law.

7. **PAYMENT OF MONETARY PENALTIES.** Dr. Tiano agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Dr. Tiano further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

8. **COOPERATION.** Dr. Tiano will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In addition, Dr. Tiano agrees to be named as an unindicted co-conspirator and unindicted aider and abettor in appropriate subsequent additional charges, including additional indictments. In complying with this provision, Dr. Tiano may have counsel present except when appearing before a grand jury.

9. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Dr. Tiano, and except as expressly provided for in paragraph 11, nothing contained in any statement or testimony provided by Dr. Tiano pursuant to this agreement, or any evidence developed therefrom, will be used

Defendant's initials

11/17/2009 19:48   30469/1237   JOHN TIANO MD   Case 2:09-cr-00259   Document 9   Filed 12/15/09   Page 6 of 20   PAGE 07/21

J. Timothy DiPiero, Esquire
November 17, 2009
Page 6                    Re:   John Theodore Tiano, M.D.

against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

10. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Dr. Tiano for any violations of federal or state laws. The United States reserves the right to prosecute Dr. Tiano for perjury or false statement if such a situation should occur pursuant to this agreement.

11. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Dr. Tiano stipulate and agree that the facts comprising the offenses of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Dr. Tiano agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Dr. Tiano, and he is subsequently tried on any of the charges in the information, the United States may use and introduce the "Stipulation of Facts" in the United States case-in-chief, in cross-examination of Dr. Tiano or of any of his witnesses, or in rebuttal of any testimony introduced by Dr. Tiano or on his behalf. Dr. Tiano knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Dr. Tiano understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the

Defendant's initials

J. Timothy DiPiero, Esquire
November 17, 2009
Page 7                                    Re: John Theodore Tiano, M.D.

Court, the parties will not have the right to withdraw from the plea agreement.

   12. **AGREEMENT ON SENTENCING GUIDELINES**. Based on the foregoing Stipulation of Facts, the United States and Dr. Tiano agree that the following provisions of the United States Sentencing Guidelines apply to this case.

I.  COUNT ONE:     Conspiracy to use a registration number in violation of 21 U.S.C. §§ 846 and 843(a)(2)

Base Offense Level per USSG §2D3.1                 6

Aggravating Role per USSG §3B1.1(a)               +4
                                                  10

II. COUNT TWO:    Aiding and abetting health care fraud in violation of 18 U.S.C. §§ 1347 and 2

Base Offense level per USSG §2B1.1(a)(2)           6

Specific Offense Characteristics
per USSG §2B1(b)(1)(E) ($119,785.57)              + 8

Aggravating Role per USSG §3B1.1(a)               +4
                                                  18

III. APPLICATION OF USSG 3D1.2 - 1.4 GROUPING ISSUE

Multiple Count Adjustment-   USSG 3D1.4(b) ½ unit - yields no increase

COUNT ONE:    Adjusted offense level           10

COUNT TWO:    Adjusted offense level           18

                                                          ___JT___
                                                          Defendant's
                                                          initials

J. Timothy DiPiero, Esquire
November 17, 2009
Page 8                                Re:  John Theodore Tiano, M.D.

---

Total Adjusted Offense Level, before
consideration of acceptance of
responsibility                                                18

    This agreement does not contain each and every fact known to defendant and to the United States concerning defendant's involvement and the involvement of others in the charges set forth in the information.

    The United States and Dr. Tiano acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

    13. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** The parties reserve the right to appeal the District Court's determination of the adjusted offense level, prior to consideration of acceptance of responsibility, if the District Court's determination differs from that stated in paragraph 12 above. Nonetheless, Dr. Tiano knowingly and voluntarily waives his right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is below or within the Sentencing Guideline range corresponding to offense level 18. The United States also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is within or above the Sentencing Guideline range corresponding to offense level 15.

    Dr. Tiano also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

    The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.



J. Timothy DiPiero, Esquire
November 17, 2009
Page 9                                Re: John Theodore Tiano, M.D.

    14. **WAIVER OF FOIA AND PRIVACY RIGHT.** Dr. Tiano knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

    15. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

    (a) Inform the Probation Office and the Court of all relevant facts and conduct;

    (b) Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c) Respond to questions raised by the Court;

    (d) Correct inaccuracies or inadequacies in the presentence report;

    (e) Respond to statements made to the Court by or on behalf of Dr. Tiano;

    (f) Advise the Court concerning the nature and extent of Dr. Tiano's cooperation; and

    (g) Address the Court regarding the issue of Dr. Tiano's acceptance of responsibility.

    16. **VOIDING OF AGREEMENT.** If either the United States or Dr. Tiano violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

Defendant's initials

J. Timothy DiPiero, Esquire
November 17, 2009
Page 10                           Re:  John Theodore Tiano, M.D.

17. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Dr. Tiano in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Dr. Tiano in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

CHARLES T. MILLER
United States Attorney

By: *Monica K. Schwartz*

MONICA K. SCHWARTZ
Assistant United States Attorney

MKS/fgc

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this 10-page agreement that I have read and carefully discussed every part of it with my attorneys, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorneys have advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorneys in this matter.

_____          11/17/09
JOHN THEODORE TIANO, M.D.             Date Signed
Defendant

_____          11/18/09
J. TIMOTHY DiPIERO                    Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.

CRIMINAL NO. _____
21 U.S.C. § 846
18 U.S.C. § 1347
18 U.S.C. § 2

JOHN THEODORE TIANO, M.D.

# I N F O R M A T I O N

The United States Attorney Charges:

## COUNT ONE

(Conspiracy To Misuse Registration Number)

From 2005 and continuing to on or about March 31, 2007, at or near Kermit, Mingo County, West Virginia, and within the Southern District of West Virginia, and elsewhere, defendant JOHN THEODORE TIANO, M.D. and other individuals known to the United States Attorney, knowingly conspired to commit offenses in violation of 21 U.S.C. § 843(a)(2), that is, knowingly and intentionally causing others to use a registration number which was issued to him, in the course of the distribution of, and for the purpose of acquiring and obtaining hydrocodone, a Schedule III controlled substance, and alprazolam, A Schedule IV controlled substance.

In violation of Title 21, United States Code, Section 846.

"PLEA AGREEMENT EXHIBIT A"

## COUNT TWO

(Health Care Fraud/Aiding And Abetting)

### Introduction

At all relevant times:

1. Defendant JOHN THEODORE TIANO, M.D., was a medical doctor licensed in West Virginia and associated with a medical clinic (hereinafter "the clinic"), located between Kermit and Crum, West Virginia.

2. Beginning in or about September 2005, controlled substance prescriptions issued through the clinic were transmitted to and filled at a pharmacy located at or near Kermit, Mingo County, West Virginia.

3. Defendant was the "supervisor" of certain nurse practitioners (N.P.s) and physician' assistants (P.A.s) employed by the clinic.

4. Medicare was a program established and fully funded by the United States to provide health insurance to the elderly, severely disabled, or persons with specific chronic medical conditions. Medicare was administered by the Department of Health and Human Services (HHS) and private companies under contract with HHS.

### The Scheme to Defraud

5. From 2005 and continuing to in or about March 31, 2007, at or near Kermit, Mingo County, West Virginia, and within the Southern District of West Virginia, and elsewhere, defendant JOHN THEODORE TIANO, M.D., aided and abetted by others known to the

2

United States Attorney, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, that is, the Medicare program, which scheme and artifice involved misrepresentation and concealment of material facts, and to obtain, by means of materially false and fraudulent pretenses and representations, money owned by and under the control and custody of the Medicare program, in connection with the payment for medical services and for prescription medication.

### Manner and Means of Execution of the Scheme

6. It was part of the scheme that defendant JOHN THEODORE TIANO, M.D., allowed the clinic and its employees to use his name and Medicare provider number to bill for services as if such services had been personally performed by defendant, a physician, when in fact, they were not.

7. It was further part of the scheme that defendant JOHN THEODORE TIANO, M.D. allowed nurse practitioners and others who were employed by, or associated with, the clinic to use his Drug Enforcement Administration (DEA) registration number to issue controlled substance prescriptions for, and to acquire and obtain hydrocodone, a schedule III controlled substance, and alprazolam, a schedule IV controlled substance.

8. It was further part of the scheme that N.P.s who were employed by the clinic personally met with and provided face-to-face personal examinations and evaluations of patients.

9. It was further part of the scheme that defendant normally did not meet with or perform face-to-face examinations and evaluations of patients at the clinic.

10. It was further part of the scheme that employees of the clinic, would and did complete billing documents falsely indicating that services had been personally provided by defendant to Medicare beneficiaries, thereby facilitating payments by Medicare.

11. As a result of the fraudulent scheme, defendant JOHN THEODORE TIANO, M.D., aided and abetted by others known to the United States Attorney, would and did cause the Medicare program to pay $119,785.57 for services ostensibly performed by a physician, which were not, in fact, performed by a physician.

In violation of Title 18, United States Code, Sections 1347 and 2.


UNITED STATES OF AMERICA

CHARLES T. MILLER
United States Attorney

By: _____
MONICA K. SCHWARTZ
Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.   CRIMINAL NO. _____

JOHN THEODORE TIANO, M.D.

### STIPULATION OF FACTS

The United States and John Theodore Tiano, M.D. (defendant) stipulate and agree that the facts comprising the offenses of conviction in the information to be filed against him in the Southern District of West Virginia, and the relevant conduct for those offenses, include the following:

1. Defendant has been a duly licensed medical doctor in West Virginia since September 13, 2004, and at all relevant times, had a Drug Enforcement (DEA) registration number authorizing him to issue prescriptions for controlled substances and a unique Medicare provider identification number, allowing him to bill Medicare for services that he provided.

2. In 2005, while defendant was employed as a full-time resident in Marshall University's Cardiology Program, he was recruited to "moonlight" at a new practice then known as the Justice & Wells Medical Complex, LLC and later known as the Justice Medical Complex (JMC), located between Kermit and Crum, West Virginia.

3. From the time he was approached to join JMC, to at least March 26, 2009, defendant continued in the full time Cardiology Program at Marshall University, completing that program in June 2009. Despite his full time employment with Marshall University, defendant worked with others who owned, operated, and/or were associated with, JMC to initiate and develop the business.

"PLEA AGREEMENT EXHIBIT B"

Defendant's Initials

4.  Defendant began his association with JMC in or about May, 2005. In or about April 2007, at the insistence of the Marshall University Cardiology Program, defendant was required to end his association with JMC. Defendant stopped working for JMC in April 2007 and recruited another doctor to take his place. That physician left JMC, after a few months. Dr. Tiano then recruited a second physician to take his place at JMC in September 2007. Compensation provided by JMC to defendant included wages of at least $76,658.89 plus non-wage payments of at least $176,343.65, totaling $253,002.54. Defendant's last paycheck from JMC was issued on or about September 28, 2007.

5.  JMC used defendant's DEA registration number to issue prescriptions for controlled substances through August of 2007 and to bill Medicare for defendant's services through October, 2008.

6.  While associated with JMC, defendant:

    a.  Recruited at least two other physicians, and a physician's assistant (PA), to associate with JMC, and "supervised" at least three nurse practitioners and at least one physician's assistant; and

    b.  Assisted the owner of JMC with locating a billing and credentialing company.

7.  Medicare is a program established and fully funded by the United States to provide health insurance to the elderly, severely disabled, or persons with specific chronic medical conditions. Medicare is administered by the Department of Health and Human Services (HHS) and private companies under contract with HHS.

8.  In 2005, in conjunction with his association with JMC, defendant signed a statement certifying to Medicare that he understood that the Medicare identification number issued to him could only be used by him or by a provider or supplier to whom he reassigned his benefits when billing for services rendered by him, and agreeing to abide by the Medicare laws, regulations, and program instructions.

Defendant's Initials

2

9. Defendant also signed a statement certifying to Medicare that he would not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

10. Between 2005 and 2007, defendant knowingly and unlawfully allowed JMC to use his Medicare provider number to bill for services performed by mid-level practitioners. Defendant was alerted that JMC had used his Medicare number to bill improperly but did not take steps to effectively stop the fraudulent billing.

11. Defendant's compensation from JMC was linked to the fees generated from billing Medicare and other insurers.

12. Defendant knew that it was improper and illegal for JMC to bill Medicare under his Medicare provider number for services performed by others, including mid-level practitioners, as if he personally had performed the medical services.

13. JMC billed Medicare $400,488.25 for services indicating defendant as the treating physician from December 3, 2005 through March 31, 2007. Medicare paid JMC $119,785.57 on those claims. Defendant rarely performed services for JMC Medicare patients between ~~November 1,~~ December 3, 2005 and March 31, 2007.

14. The parties hereby agree and stipulate that the readily provable intended loss to Medicare attributable to defendant is $119,785.57.

15. While associated with JMC, defendant knowingly and unlawfully agreed to allow others, including mid-level practitioners such as NPs and PAs to use his DEA registration number to issue tens of thousands of controlled substance prescriptions.

16. Mid-level practitioners such as NPs and PAs are non-physician medical professionals who provide patient care under the supervision of a physician. The scope of a mid-level provider's practice is governed by specific federal and state laws, and by policies promulgated by government and private insurance programs. In general, mid-level practitioners can examine, diagnose and provide certain treatments, including the prescription of certain, limited amounts of controlled substances, e.g.,

Defendant's Initials

3

a 72 hour supply of hydrocodone, a Schedule III controlled substance, without refills.

17. A physician or mid-level provider who wishes to distribute controlled substance as part of his or her professional practice must do so pursuant to a DEA registration (21 U.S.C. § 822; 21 C.F.R. 1301.11).

18. JMC patients were routinely seen by the mid-level practitioners who caused prescriptions for controlled substances such as hydrocodone and alprazolam to be issued under defendant's name and Drug Enforcement Administration (DEA) registration number, in quantities intended to cover a 30-day supply and exceeding the amounts that mid-level practitioners are authorized to prescribe in their own names.

19. Patients were generally required to make monthly visits to JMC.

20. A valid controlled substance prescription must be issued by a practitioner who is authorized by the jurisdiction in which he is licensed to practice his profession and either registered or exempted from registration by the DEA (21 C.F.R. Section 1306.03(a)(1) and (2)).

21. A valid controlled substance prescription must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice (21 C.F.R. 1306.04(a)).

22. Mid-level practitioners at JMC (NPs and PAs) who had both prescriptive authority and a DEA registration did not prescribe controlled substances using their assigned DEA number as required. These mid-level practitioners used the DEA number of defendant which was not governed by conditions that a mid-level provider must follow. Specifically, PAs and NPs are limited to a seventy-two (72) hour supply, without refills, for all Schedule III controlled substances, whereas a physician with a DEA registration has no such limitation.

23. During defendant's tenure at JMC, NPs & PAs routinely prescribed 30-day supplies of controlled substances under defendant's name and DEA number.

Defendant's Initials

4

24. It was improper and illegal for the JMC mid-level practitioners to issue controlled substance prescriptions using his name and DEA number.

25. Defendant knew that the controlled substance prescriptions issued through JMC under his name and DEA number included:

    (a) hydrocodone, a Schedule III controlled substance which is a favorite of drug seekers and is commonly abused, traded, or sold "on the streets" for a profit; and

    (b) alprazolam, also known as "Xanax," a Schedule IV anti-anxiety medication which is often requested in combination with hydrocodone by drug seekers for the heightened effect the combination produces and is commonly abused, traded, or sold "on the streets" for a profit.

26. Defendant knew that JMC attracted a large number of individuals who sought controlled substances, especially pain pills/hydrocodone, in conjunction with alprazolam.

27. Beginning in approximately September 2005, all of JMC's controlled substance prescriptions were sent to Sav-Rite Pharmacy in Kermit, Mingo County, West Virginia. At that time, the owner of Sav-Rite, who was also a pharmacist, was made aware that mid-level providers, rather than Dr. Tiano (or another physician), would actually be seeing JMC patients and causing the prescriptions to be issued using Dr. Tiano's DEA registration number.

28. On or about September 9, 2007, the WVBOM received an anonymous complaint alleging that defendant and others had engaged in illegal and unethical conduct in prescribing through JMC and that the clinic was handing out pain pills like candy. The WVBOM commenced an investigation of defendant.

29. On December 1, 2008, as the result of the investigation, defendant and the WVBOM entered into a Consent Order. Pursuant to said Order, defendant was (a) "PUBLICALLY REPRIMANDED;" (b) his license to practice medicine and surgery were placed on "PROBATION" for three years; (c) ordered to take a controlled substance management course;

Defendant's Initials

(d) ordered to do a book report on "Responsible Opiod Prescribing, A Physician's Guide;" (e) ordered to confine his practice to cardiology during his period of probation; and (f) ordered to cease work at or for JMC.

30. The WVBOM concluded that there was "probable cause to substantiate charges" that while at JMC, defendant prescribed, dispensed or administered a prescription drug other than in good faith and/or in a therapeutic manner in accordance with acceptable medical standards, failed to practice medicine acceptably, and engaged in unprofessional, unethical, and dishonorable conduct.

31. This Stipulation of Facts does not contain each and every fact known to defendant and to the United States concerning defendant's involvement and the involvement of others in the charges set forth in the information.

_____   Date 11/17/09
JOHN THEODORE TIANO, M.D.
Defendant

_____   Date 11/18/09
J. TIMOTHY DiPIERO
Counsel for Defendant

_____   Date 12-8-09
MONICA K. SCHWARTZ
Assistant United States Attorney

Defendant's Initials